**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **v.** | **)** | **1:21-cr-00358-EGS** |
| | **)** | |
| **HOWARD B. ADAMS,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S (PRO SE)**
**MOTION TO DISMISS ALL CHARGES**

The United States of America, by and through the United States Attorney for the District of Columbia, hereby opposes defendant Howard B. Adams's pro se motion to dismiss all charges (ECF no. 34).  The defendant's arguments are essentially a version of the "Sovereign Citizen" defense, which has been rejected by every court to consider it, usually summarily, and which the Court of Appeals for the Fifth Circuit has aptly characterized as "a hodgepodge of unsupported assertions, irrelevant platitudes, and legalistic gibberish." *Crain v. Comm'r of Internal Revenue*, 737 F.2d 1417, 1418 (5th Cir. 1984) (per curiam).

Introduction and Background

Defendant Adams is one of thousands of rioters who breached the United States Capitol on January 6, 2021, attempting to disrupt Congress's certification of the 2020 Electoral College vote for the President and Vice-President of the United States. As the government will prove at trial, the defendant and his

wife traveled together from his home in central Florida to D.C., shortly before the riot.  On the day of the riot, the defendant approached the Capitol on foot from the east, carrying a flag mounted on a short flagpole, moving across a couple hundred yards of the east plaza with other rioters as police officers retreated.  He then unlawfully entered the Capitol through the East Rotunda Doors, at 2:26 p.m., bursting through the doorway and still holding his flag after other rioters almost directly in front of him pushed aside police officers trying to block the way.

The defendant then immediately proceeded to the Rotunda and then, after about two minutes, proceeded into Statuary Hall and then into the area known as the Statuary Hall Connector.  In the Connector the defendant and other rioters were initially blocked from proceeding further by a line of police officers.  On the other side of the officers, about 10 yards straight ahead, was a doorway to the House of Representatives Chamber.

The House had been conducting the certification procedure earlier in the day, but had recessed when rioters breached the building at about 2 p.m.  However, some Members of Congress were still inside the Chamber, guarded by members of the U.S. Capitol Police, who had drawn their weapons.

As the crowd of rioters in the Connector grew, several rioters near the defendant angrily insisted that the police let

them through.  At one point a rioter near the defendant crudely
yelled that "we're f***ing coming for" that "bitch Pelosi,"
referring to the Speaker of the House, whom this rioter also
loudly called a "traitor" and a "c**t."

After several minutes, at about 2:36 p.m., the group of
rioters, including the defendant, surged past the police line
and up to the Chamber doorway.

The group remained there, unable to break through the heavy
doors, for several more minutes.  During this period a rioter
was fatally shot by a USCP member near another doorway leading
to the House Chamber.

The defendant and other rioters then proceeded back into
the Rotunda.  At about 3:06 p.m., with hundreds of rioters in
the Rotunda, a group of uniformed police officers entered the
room, formed a line, and began to attempt to direct and push the
rioters out of the room.  Although the defendant was initially
positioned in the Rotunda far away from the police line, as the
police gathered he moved toward them, instead of away from them
in the direction of the nearest exit.  He then worked his way to
the front, so that he was face-to-face with the line of
officers, making physical contact with one and possibly two
officers as the officers struggled to get the rioters to move
away.

Eventually, the defendant made his way back to the East Rotunda Doors where he exited the building at about 3:16 p.m.

For his conduct in the Capitol on that day the defendant was charged in a six-count superseding indictment.  Two of the counts charged are felonies:  interfering with a law enforcement officer during a civil disturbance, in violation of 18 U.S.C. § 231(a)(3); and obstructing and attempting to obstruct a civil proceeding, in violation of 18 U.S.C. § 1512(c)(2).  The remining four are misdemeanors:  entering a restricted building, in violation of 18 U.S.C. § 1752(a)(1); disorderly conduct in a restricted building, in violation of 18 U.S.C. § 1752(a)(2); disorderly conduct in the Capitol building, in violation of 40 U.S.C. § 2154(e)(2)(D); and parading/picketing/demonstrating in the Capitol building, in violation of 40 U.S.C. § 2154(e)(2)(G). The defendant has pled not guilty.

Although he has retained counsel, this Court granted the defendant permission to file a pro se motion, after counsel, aware in advance of the general nature of the motion, refused to file the motion on his behalf.[1]  In the pro se motion (ECF no. 34) the defendant appears to assert that the United States government is actually a "corporation" based in the District of

---

[1]Counsel have filed a motion to withdraw entirely from the case (ECF no. 33), which the Court has taken under advisement.  Recently, however, the defendant filed a pro se "notice of termination" (ECF no. 35) indicating that these counsel no longer represent him in this matter.

4

Columbia, and that because he has not "contract[ually] consent[ed]" to be "governed" by that corporation, he cannot be charged with violating any of the corporation's "bylaws."  Deft. Mot. at 1-2.  The motion also asserts that he has been "addressed as a corporation" and "charged as a corporation," *id.* at 4, allegations which seem to be alluding to the fact that the Superseding Indictment uses all upper-case letters when it sets out his name.[2]  The motion seeks to "dismiss all charges" in this case.  *Id.* at 1.[3]

The Court should deny the motion.

Argument

In its essence, the defendant's motion asserts that he does not recognize the United States government's authority to bring criminal charges against him because he considers the government to be a corporation.  This is nothing more than an iteration of the so-called "Sovereign Citizen" movement, a movement in which criminal defendants and other litigants file frivolous pleadings claiming that the federal government has no jurisdiction over them.  *See United States v. Neal*, 776 F.2d 645, 657 (9th Cir.

---

[2] The defendant orally advanced such an argument when he addressed the Court at the last hearing.

[3] The motion also asserts that he, the defendant, has "trespassed no man" and has "done no harm," Def. Mot. at 1, which are, to some extent, simply denials of some of the charges against him.  The validity of those assertions, of course, should be resolved in the trial in this case, not in a pretrial motion to dismiss.

2015) (linking federal criminal defendant's "non-sensical"
filings that asserted federal government was a corporation to
the defendant's "'sovereign citizen' belief system").

In terms of the authority of the United States government
to charge him with a federal crime, generally nothing more than
his presence in the country at the time the offense was
committed, and probable cause that he committed the offense, as
established by indictment by a grand jury if the offense is a
felony, *see* U.S. Const. Amend. V, are required.  Tellingly, the
defendant at no point claims not to have been residing in the
United States of America, that is, the territory of our country,
at the time of the Capitol riot.

Indeed, under the federal criminal code, "*[w]hoever* commits
an offense against the United States . . . is punishable as a
principal."  18 U.S.C. § 2 (emphasis added).  The government
even has the authority to charge an individual with a federal
crime who was not present in the United States at the time the
crime was committed.  *Blackmer v. United States*, 234 U.S. 421,
436-39 (1932) (involving tax evasion committed by U.S. citizen
residing in France); *United States v. Ali*, 405 U.S. App. D.C.
279, 293-97 (2016) (upholding hostage-taking conviction of
defendant-appellant, a Somali national, for acts he committed
entirely while in Somalia).  While there are of course
exceptions for persons who have diplomatic immunity, *see* Vienna

6

Convention on Diplomatic Relations and Optional Protocol on Disputes, 23 U.S.T. 3227 (U.S. Treaty, 1961), defendant Adams has made no claim that he is a properly accredited foreign diplomat.

The defendant's related claim that the statutes he is accused of violating are nothing but corporate "bylaws" deserves no detailed response.  Despite his characterization of these statutes, the defendant makes no argument that any of them was not duly enacted by Congress and signed by the President.  Nor does the defendant make any claim that Congress exceeded its authority under Article I of the Constitution when it enacted any of these statutes.

Finally, the defendant's argument that the superseding indictment is flawed because it sets out his name entirely in upper-case letters is frivolous.  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).  The defendant cannot seriously contend that the superseding indictment does not inform him of the charges against him merely because his name appears only in upper-case letters. *See United States v. Rogers*, 16 Fed. Appx. 38, at *39 (2d Cir., Jun. 12,

2001) (ruling that defendant's argument--that his right to a grand jury indictment under the Grand Jury Clause of the Fifth Amendment was violated because it set out his name entirely in upper-case letters--was frivolous); United *States v. Class*, 38 F. Supp. 3d 19, 24 (D.D.C. 2014) ("[T]he . . . argument that the use of only upper-case letters [in the indictment, for the defendant's name,] somehow deprives the Court of subject matter jurisdiction find[s] no support in the law."); *United States v. Mitchell*, 405 F. Supp. 2d 602, 603-06 (D. Md. 2005) (characterizing defendants' argument about capitalization of the letters in their names in the indictment as "patently without merit" and "[b]izarre").

<u>Conclusion</u>

For the foregoing reasons, and for any additional the reasons the government might offer at any hearing on the defendant's motion, the motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

by:  /s/*Michael C. Liebman*
Michael C. Liebman
Assistant U.S. Attorney
D.C. Bar no. 479562
601 D Street, N.W., room 4-1501
Washington, D.C.  20001
(202) 252-7243
michael.liebman@usdoj.gov